ROBERTS ET AL. VS. RANDOLPH.

The plaintiff or his attorney may, under our statute, dismiss, in vacation, any suit pending in any of the courts of this State, except in actions of replevin; but he cannot, by an order to dismiss an attachment suit, relieve himself of the costs incurred in preserving the property attached, where the sheriff cannot deliver such property to the owner and relieve himself from responsibility; and this court will not interfere with the discretion of the Circuit Court in allowing the sheriff his reasonable costs incurred in the preservation of the property under such circumstances.

*Appeal from the Circuit Court of Desha County.*

Hon. THEODORIC F. SORRELLS, Circuit Judge.

GRACE, for the appellant.

CUMMINS, contra.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

The transcript in this case shows that, on the 3d of September, 1852, Roberts & Co. caused to be issued from the office of the clerk of the Circuit Court of Desha county, a writ of attachment against the steam boat GENERAL SHIELDS, having filed an affidavit that the boat was indebted to them in the sum of $834 03, and executed a bond as required by the statute.

Randolph, the sheriff of the county, returned upon the writ, that, on the 4th of the same month, he executed it by seizing and taking into his possession, the boat, her machinery, tackle and furniture, &c., and by reading the writ to William R. Rice, who was captain of the boat, and in charge of her at the time, &c., and that he, Randolph, had kept the boat, and still had her in his possession, and under his charge.

At the return term of the writ, on the 19th October, 1852, it appears that óne Clark appeared on behalf of the boat, and filed a motion to quash the proceedings in the attachment suit for irre-

gularities, and to dismiss the cause ; which motion the court sustained, and rendered judgment against the plaintiffs for costs.

At the same term Randolph, the sheriff, made an application to the court to allow and tax in his favor, against Roberts & Co., the plaintiffs' in the attachment suit, and as part of the costs therein, the following bill :

"To bailing and attention to the steam boat GENERAL
SHIELDS, from the 4th day of September, 1852, up to the
19th October, 1852, inclusive, 45 days, at $5 50 per day,  $ 247 52
Removing the Shields to a safe place of keeping,          10 00
                                                        ————
     Making                                             $257 52"

Roberts & Co. resisted the application, and at a subsequent term of the court, the matter was heard and determined by the judge, on the following evidence, in substance :

*Moon* testified, that he was clerk of the court at the time the attachment was issued. That, on the day after the boat was attached, one of the plaintiffs came to him, and directed him to dismiss the suit, and he told him he would do so. That, on the same day, or the day after, witness went to Randolph, the sheriff, and told him to release the boat, as the plaintiff had directed him, witness, to dismiss the suit.

That, if the plaintiff tendered witness the costs at the time he ordered the suit dismissed, he did not recollect it, but that the case was not kept on the docket because the costs were not paid, but merely because witness neglected to make the entry on the record.

That, on the day he told the sheriff, Randolph, to release the boat, witness saw Captain Rice, who had command of her before, and at the time she was attached, and he was willing to receive her back; but that, afterwards, he refused to receive the boat from the hands of the sheriff. That, at the time witness conversed with Randolph about releasing the boat, and returning her to the

owners, he told witness that he would make out ˌthe costs, and go down and see the plaintiffs, seeming to be willing to release the boat ; but that afterwards Rice refusing to receive back the boat, Randolph declined to return the writ or release the boat. Witness did not enter any dismissal of the suit, and it was not dismissed until court met, about 19th October, 1852.

*Malpass* testified, that in the course of one or two days after the boat was attached he was called upon by the plaintiffs to witness a demand made by them upon Randolph, to release the boat from the attachment. That, one of the plaintiffs pulled out of his pocket a hand full of gold, and told Randolph, the sheriff, that he wanted to pay all costs up to that time ; and that he tendered him all his costs in and about the attachment; and he wanted him to release the attachment, and not to hold the boat any longer; and that the sheriff refused to release the boat.

*Edington* testified, that within two or three days after the boat was attached, at the request of the plaintiffs, he prepared and served a written notice upon Randolph, to release the boat from the attachment, and return her to her owners. He also requested Randolph to return the writ to the clerk's office.

The above testimony was introduced on the part of Roberts & Co., who also read in evidence the record of the proceedings in the attachment suit, and closed.

Randolph introduced the following testimony :

*Thomas* testified, that he knew the steamer GENERAL SHIELDS at the time she was under attachment; that she was in a bad condition, and that Randolph paid five dollars a day for taking care of her, during the time he had her under the writ ; and witness thought that it was worth that to take care of her. He knew that Randolph paid one man $165 50 ; and divers other sums of money for taking care of her, but how much, he did not know. That the charge made by Randolph for taking care of the boat, was reasonable.

*Clark* testified, that he was somewhat acquainted with the business of taking care of steam boats. That he knew the SHIELDS

while Randolph had her under the attachment, and from her condition, he thought $5 50 per day was a reasonable charge for taking care of her.

Roberts & Co. asked the court to declare the law to be, that they had a right to dismiss the attachment suit, on making a tender of costs, at any time they pleased; and to direct the release of the boat and the return of the writ, on tendering the costs to the sheriff; and he was bound to obey such direction; and if he refused so to do, he could not hold plaintiffs bound for costs after such refusal.

But the court declined so to decide, and held that until the case was regularly dismissed, the plaintiffs had no right to direct the sheriff to release the property.

And the above being all the evidence introduced by the parties, the court found in favor of Randolph; and ordered to be taxed in his favor $182, against the said plaintiff in the attachment suit, and as part of the costs therein, &c.

Roberts & Co. moved the court for a new trial, which was refused and they excepted, and appealed to this court.

For safe keeping property seized under legal process, a sheriff is entitled to such fees as the court, out of which the process issued, shall deem reasonable. *Digest, chapter 68, section 8, page* 520.

In *Irvin vs. The Real Estate Bank*, 5 *Ark. Rep.* 30, this court held that the allowance of fees for keeping property taken in attachment was a matter left (by the above statute) to the discretion of the Circuit Court; and when the Circuit Judge, in making such allowance, has all the facts before him, and the question involves no principle of law, this court cannot disturb his decision.

The plaintiff, or his attorney, may dismiss any suit pending in any of the courts of this State, except actions of replevin, in vacation, in the office of the clerk, on the payment of all costs that may have accrued therein. *Dig., chap.* 126, *sec.* 134, *p.* 817.

Here, the plaintiffs directed the clerk to dismiss the suit, but it was not done. They did not pay, or offer to pay, the clerk his costs, but he did not on that account, decline to dismiss the suit.

He merely neglected to do so.   He perhaps was willing to look to the plaintiffs for the payment of his costs afterwards.   As between him and the plaintiffs, therefore, the suit may be regarded as virtually having been dismissed.

The clerk told the sheriff that the plaintiffs had directed him to dismiss the suit, and that he could release the boat.   The plaintiffs repeatedly directed the sheriff to release the boat, and return the writ, tendering him his costs.   But what was the sheriff to do with her?   The testimony shows, that Rice, the captain, who had charge of the boat at the time she was attached, refused to receive her back from the sheriff, and the plaintiffs failed to prove that there was any other person, to whom the sheriff could have surrendered her, or that they notified her owners, or any person authorized to act for them in the premises, of their desire to release the boat.   The sheriff had no right, under these circumstances, to set her adrift, or abandon her.

When the court met, it found the attachment suit on the docket, and on a motion interposed on behalf of the owners of the boat, quashed and dismissed the suit at the plaintiffs' costs.   The court found, also, that the plaintiffs had sued out the attachment, and caused the boat to be seized and taken out of the possession of those in charge of her; that in a few days afterwards, they had concluded to abandon their suit, but for what cause does not appear.   That they had directed the clerk to dismiss the suit, but it had not been done.   That they had directed the sheriff to release the boat, but failed to show that there was any one, into whose care he could have delivered her, at the risk and costs of the owners; and that he kept her under his own charge, and at his own expense, until the meeting of the court, the return term of the writ.   Under these circumstances the court, in the exercise of the sound discretion entrusted to it by the law, in such matters, taxed the plaintiffs with what it deemed the reasonable expenses incurred by the sheriff in keeping the boat, and we do not feel warranted in disturbing its judgment.   Affirmed.

Absent, Mr. Justice Scott.